May it please the Court, my name is Lucian Gillham, I represent the appellants in this action. We're here on appeal from a grant of a motion to dismiss. The order granting the motion to dismiss only reached a jurisdictional issue and dismissed based on the Rooker-Feldman Doctrine and did not reach the merits of the claims. So we're asking reversal of that decision and then remand to consider the rest of the issues before the District Court at that time. Now to apply Rooker-Feldman there are four elements. First, the federal court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state court judgment must have been rendered before the proceedings commence. Now our position is that none of the four elements are met. When you go to the first element, the federal court plaintiff must have lost in state court. Now in the underlying case, Baker v. Adams, we had been attorneys for Gina Baker, the mother of the deceased, but we had withdrawn due to a conflict created by the defendants based on false allegations against us that they incited. Over probably a year before all this motion for sanctions and the order happened. So we had met in parties for a year. But you did try to intervene and you lost the intervention motion. And so in one respect you are state court losers on the motion to intervene. Well, we did not win the motion to intervene. But go back to why did we not win on the motion to intervene. And the reason that we didn't win that is that the defendants argued that we had no interest in that case that was cognizable by a court. That we had no basis to intervene in that case. In other words, we're not parties. We don't have any legitimate interest that would merit intervention. So what they did was they took a position in state court where they said that, hey, you don't have any interest in this case. You've withdrawn. You're out. And so basically they took a position, contrary to us being parties to that action, basically. And they obtained judicial relief on it. Was the firm in any way affected by the judgment and the ultimate judgment, the end judgment in that underlying case? And what I mean by that is were any of the sanctions, did any of them come out of the firm's pocket or was there anything that materially disadvantaged the firm from the judgment? Well, if you're asking did we receive some sort of judgment where it said Souter and Gillum will pay $10,000 in attorney's fees and costs? Something like that, yeah. That did not happen. Now, what did impact us in that is that although we were not a party to that order and although we did not have to pay money and although we didn't have our claims dismissed, not that we had any at that time, it has damaged our reputation. It has put us in a position where if we apply to Pro Hac Vitae somewhere, if we apply to be admitted to another- So is that your injury? In this case, is that for the purposes of standing, how would you describe the injury that's at play in this case? Well, I would say the injuries are numerous. They do include reputational injury, but they also include that, like I said, it affects our ability to practice law. If we want to Pro Hac Vitae in, if we want to move to be admitted into another federal court, if we want to attempt to be class counsel, we have to disclose these things. What state court order would you link those injuries, the sort of reputational and beyond reputational, but sort of practical, legal, professional injuries? What district court order, or I'm sorry, state court order do you link those to? Well, any time there's allegations made like that against you, so we're going to have to disclose- Right, but the question is what district court order? State court order, well- Yeah, yeah, state court order. It would be the, it's a confusing case, it would be the order for sanctions from Judge Gwynn, but- But you weren't, were you a party to that? No, no, we weren't, and the defendants have said we weren't party to that, and that's one reason Rooker-Feldman should not apply, is that there's the Supreme Court case, Lance v. Dennis, that said that you can't apply this- So why doesn't, haven't you kind of waived or failed to exhaust this, because those weren't appealed, were they? You didn't appeal the denial of the motion to intervene or the sanctions. Now correct me if I'm wrong, because the procedure is complicated, but my understanding is you didn't seek a remedy in the state court system. What that means, if it's true, I don't know, but is that true? That's true, we did not appeal from the denial of the motion to intervene, that's correct. And, but at the same time, if you get into the jurisdictional issue, we still have to be parties, and under Lance v. Dennis, being in privity with somebody who was party is not enough. And if you look at the defendant's briefing of the case, you know, they have taken the position repeatedly, all of them, that we weren't parties to that order, and in both in the state court, but in the briefing to the district court. Mr. Williams has said in his briefing at appendix page 711, counts to have standing related to orders issued directly against them, not from orders applicable only to their clients. Neely has said the judgment slash sanction order takes no actions against plaintiffs. Indeed, it does not make any direct reference to plaintiffs, or even use their names at any point. The judgment slash sanctions order simply dismisses former clients' complaint with prejudice. That's appendix page 563. And the Adams defendants made a similar argument, nearly identical language, appendix page 712. And the Adams defendants have stated, and I quote, that because plaintiffs had withdrawn, they were not, and here's the quote, entitled to any notice or opportunity to be heard on a sanctions motion that neither sought nor obtained relief from the attorneys. Again, plaintiffs here are conflating their former client's interest with their own. Plaintiffs had no constitutional right to participate in an action where they no longer represented the party. So in addition to obtaining relief in state court by denying the motion to intervene, I mean, they said that we couldn't be parties, that we had no interest in this case. And so you can't, there's no way to say that we're parties under Rooker-Feldman. I mean, that just has to go. You know, and in that case, the matter should be remainded back down to the district court to further consider things. Now, if you get to the second and third elements of Rooker-Feldman, I think that the case of DuBose versus Kelly basically addresses those issues. You have to keep in mind this is a jurisdictional issue, and the federal courts, being courts of limited jurisdiction, have to confirm their own jurisdiction. And in DuBose, both the district court and the Eighth Circuit Court of Appeals got to the merits of the issues. And the way that the DuBose court, which the DuBose case involved a plaintiff who was alleging collusion between the party defendant, the party defendant's lawyers, and the judge in that case. And he lost in state court in that case. And what happened was that summary judgment was granted on the merits of that case, and the Eighth Circuit reversed. And what they said was that the violation does not depend on whether the results of DuBose's trial would have been the same without the corruption, or whether all the rulings made by Judge Beshear at the request of the Freedman attorneys were correct when viewed in hindsight. And so basically what they're saying is that this is an issue of a procedural due process violation that does not require an attack or reversal of the judge's order. And so that basically addresses the second and third elements. Well, let me ask you this. I'll just tell you what I think was bothering the judge, the district court here. I think what was bothering the district court here is, and I don't know that this is true necessarily, but I got this sense from the order, which is if we find in your favor, you're essentially arguing that the state court order defamed us. It had serious reputational consequences, and it was untrue. Those are sort of elements of your claim. And so I think the district court was like, well, but doesn't that undermine the order? Because there were findings that, in fact, you or later counsel or whatever acted dilatory or whatever caused the sanctions order. And so wouldn't we be undoing that sanctions order by essentially saying, no, no, it was all false. It was all false, and therefore the sanction order goes. I think that's what was bothering the district court. I'm not saying that that's Rooker-Feldman, but I want to give you a chance to respond. Well, it probably does. And realistically, we don't, really any of us, want situations where you have lawsuits based on lawsuits based on lawsuits based on lawsuits. I mean, we don't want to get lawsuits. We want these cases to be over with. And so it's quite understandable that Judge Miller would have been concerned about that issue. The problem is, is that it's a jurisdictional issue. He did have an obligation to confirm his jurisdiction. Those issues were raised. But having said that, there's also an obligation to take the case unless you don't have jurisdiction. And Rooker-Feldman has very specific requirements that are not met here. We were not parties to that case. The most that they've been able to argue is that we were in privity at one point, although we've drawn more than a year before, due to a conflict of interest. So we no longer had an identity of interest with Ms. Baker. That's the best they could do. And Lance v. Dennis has said that is not good enough under Rooker-Feldman. And not only that, they've said it in their briefing below the appendix pages I've cited, that we were not parties to that order, that we were not affected. That's been their position. They obtained relief in the state court below on that ground. And I'm into my rebuttal time. So I just want to ask one quick follow-up. And I don't mean to tick up your rebuttal, but it's directly related, which is suppose you had won your motion to intervene and everything else happened. Didn't appeal it, didn't appeal the judgment below. Would Judge Miller have been right in applying Rooker-Feldman in those circumstances? So at that point, you are a state court loser. So if we had won the motion to intervene, because the next step for us would have been to move to alter, amend, and reverse that order for sanctions. And that's denied. And then we don't appeal is your position, which I'll tell you is impossible. But in any event, then that would be a very, very different situation. We would probably be stuck with that state court order. Yes, sir. Counselor, I do have another question. And I may give you some more time because I'm getting into your rebuttal. But let's suppose that the district court erred in applying Rooker-Feldman. You have a section 1983 claim. So you have a state actor issue. Could you address that? And have you pled enough facts to plausibly state a claim that there's a state actor here? Yes, sir. Under DuBose motions, Kelly, we have. Basically, private lawyers are not typically state actors, even if they're an officer of the court and they file motions and obtain orders. In order to make them a state actor, there has to have been a willful participation with a state actor in a deprivation of constitutional rights. And it requires, I believe the phrase, a meeting of the minds between the state actor and the private actor to accomplish that. Now in DuBose, that was basically DuBose claimed to have overheard two ex parte meetings between the judge, the defendant in this case, and the defendant's lawyers. One where the judge told his former lawyer that, hey, you're going to be able to enjoy your retirement in peace. And the other where they disposed of how they were going to handle Mr. DuBose's exhibits. And that was enough. Those two things were enough to basically create a situation where there was reliability for a procedural due process claim. Well, we've alleged quite a bit more than that. We've alleged that they hired Neely who had no experience in complex litigation or wrongful death actions, that they paid him tens of thousands of dollars, that he was the judge's former law partner, that he was going to meet with the judge in his offices after hours, and that they basically were having conversations about the case. And the judge was telling him what he was going to do so that the Adams defendants and their lawyers could frame their arguments. And that's considerably more extensive. And there's more than that. That's considerably more extensive than was alleged in DuBose. So I think we have alleged state actor. Thank you. Mr. Thompson. May it please the court. My name is Michael Thompson. I represent the defendants and athletes in this matter. And today we're standing in front of this court saying enough is enough. And we're asking this court to affirm the dismissal of this lawsuit, whether it's on Rooker Feldman, whether it's on the standing arguments that Judge Strauss and Judge Kovacs you appeared to be interested in, whether it's on the state actor issue, Judge Gross that you were discussing at the end. We have given a truckload of reasons to dismiss the complaint. And we are asking the court to affirm on one of those bases. As Rooker Feldman was the basis of the district court's order, I'll start there and I'll address the party issue that Mr. Gillum focused on. First, Judge Strauss, you were correct. They were parties to the motion to intervene. They were state court losers to the motion to intervene. They could and should have appealed that order. And that order is all throughout their complaint. But their claim here isn't really challenging the denial of the motion to intervene. Is it it's the dismissal and the sanctions, or am I misunderstanding? In other words, their injuries or the basis of the case, if they win here, doesn't implicate the intervention motion. It implicates the other things that happen. I believe that their procedural due process order does directly or claim does directly pertain. How about the rest of it? The retaliation claim is directly related to the sanctions order. Most of them are out of the sanctions order. The procedural due process claim certainly rests on, they argue that one of the ways they were denied due process was the denial of that that motion to intervene. So they were certainly parties to that side. That's an interesting point. So what happens when one of the claims might give rise to being a state court loser, but the rest of them don't? Do you just dismiss that one claim under Rooker-Feldman or do you dismiss them all? I believe we have seen instances where one claim was dismissed under Rooker-Feldman and not the entire complaint. On the sanctions order, though, I will say that Mr. Gillum, I believe, has gone too far in arguing for a blanket rule of simply, if you're not a party, you don't, you can't be subject to Rooker-Feldman. They rely for that principle on Rim versus Engelking, and I'm butchering the pronunciation of those names, I'm sure, from this court. And really, the party issue is not why Rooker-Feldman was reversed in that case. And that case, of course, relied on Lance versus Dennis from the Supreme Court for its holding. And Lance left this question open. It did not announce a blanket rule that non-parties can never be subject to Rooker-Feldman. And this court in Shelby County versus Southern Farm Bureau recognized that question that had been left open in Lance. We pointed to- The only problem, I got to challenge that a little bit. So a lot of this is based on general preclusion principles. It's sort of a jurisdictional form of preclusion. And I think Justice Ginsburg, I think she wrote the opinion in Saudi Basic, I think that's what they're recognizing. It's like supercharged preclusion on steroids. That's true, right? Then the fact that they were a party to the first action is a prerequisite to applying preclusion. And so I don't see how you could be in privity with somebody. I don't see- If you're not there to defend yourself, I can't see how you would apply a form of preclusion against a party that's not there. Well, I think their choice of intervening, I mean, they could have had the opportunity to- They certainly could have appealed the underlying sanctions order as part of their intervention appeal. And the district court noted that under Arkansas procedures, there are instances where non-parties can appeal an order. And their claim is that they were injured by the sanctions order. And admittedly, the case cited by the district court on this point, the Arkansas Supreme Court actually says you may be able to appeal. So they didn't say you can under these circumstances. You may be able to appeal. There's certainly the possibility that they could have directly appealed if this order had the effects on them that they claim that it had. And we pointed to- On this point, we pointed to both the Sixth Circuit and the Feger versus Ferry case that said attorneys are an instance where a non-party can be bound- can be barred by worker feldman. When we pointed to the Bruce versus City of Denver case from the Tenth Circuit that noted that anyone who has the ability to appeal the order can be barred by worker feldman. The overarching theme being a federal court lawsuit is not a substitute for going through all of the proceedings that were available to you in state court. And they did not avail themselves of all of the opportunities they had. They didn't attempt to appeal from the sanctions order. They didn't attempt to appeal from the intervention order, which could have given them leave to challenge the sanctions order. And it's those actions that they failed to take that both raise an exhaustion issue and subject them to worker feldman. They did not take what was available to them. Suppose they did appeal or tried to appeal and the appellate court said, sorry, you can't appeal. Well, at that point, they would have a much stronger argument that they were barred by the procedures of the court. I think that gets you closer to the Sims case that they cite in their brief where it was state court procedures barred them from pursuing this. Here, what barred them from pursuing it was their own inaction. And that's what subjects them to worker feldman. And there's no question they are challenging the sanctions order in this case. And Judge Trost, I believe you were correct that this is what bothered the district court, is that there is no way to grant them the relief they seek in this case without effectively overturning the complaint. Throughout their 1983 claims, I make it clear that those rest on those rest on the sanctions order and the intervention order. They rest on a requirement that the sanctions order was false, was obtained by a corrupt conspiracy, was contrary to evidence. They actually seek in the prayer of their complaint, a declaration that the decedent in the underlying case, they want declared as truth that the decedent in the underlying case did not kill himself. That's one of the things they seek in this case. They have an eight-page paragraph, paragraph 32 of their complaint, that says what they thought they could have proved in the wrongful death case that was overturned. And in paragraph 71, they expressly say one of their aims in this case is to prevent the underlying judgment from being given preclusive effect in other litigation. That's the goal of this lawsuit. That's an appeal. That is what they're doing, is they're bringing this lawsuit as an appeal of that order. Again, we cited you to the Hadley-Hannovick versus Johnson case from the Seventh Circuit that said these allegations of a corrupt conspiracy, these sorts of claims directly implicate Rooker-Feldman. And so that's another case we can point you to, to say that they are barred by Rooker-Feldman. Just out of curiosity, because you mentioned preclusion, I know in a different context, but are you also arguing at some point that there's collateral estoppel or res judicata as to the state court, or is this purely a Rooker-Feldman argument? No, Your Honor. I will confess that I am not sure exactly what case would be subject to Rooker-Feldman and not preclusion, so we have absolutely raised below. We raise here preclusion. We see in the court's case law, in the MSKI's case, if Rooker-Feldman's just murky, we can skip Rooker-Feldman and go straight to preclusion and jump to the merits. And if the court wants to instead address this under preclusion law, go for it. It would be my invitation. It's every, absolutely every element of preclusion. It's an Arkansas state judgment, so we would apply Arkansas law of preclusion to determine the preclusive effect of that judgment. Every element is met. Well, the one problem you have, and I was alluding to this earlier, is this would be offensive non-mutual collateral estoppel, which I think courts have been pretty negative about. Because you're using it offensively against a non-party versus defensively against a party who litigated it. My understanding of offensive collateral estoppel is I'm on offense in the cases and I'm the plaintiff seeking a judgment. In this case, we are the defendants. I'm raising it. That's true. I'm raising it defensively to say that they are barred by their client's loss in the underlying action. Fair enough. Sorry for taking that little detour. No, but it does raise the issue. Again, if Rooker-Feldman is even murky, we can skip it. If the court is in any way inclined not to affirm on Rooker-Feldman, let's look at the other arguments that we have raised. The standing arguments came up before. I do not see, their position is in this complaint, that the sanctions order caused them injuries. That's their position and we've asserted that they're barred by Rooker-Feldman from pursuing that position in this case. But as a matter of standing law, I don't see how they were actually injured by that order. It does not name them. It does not take any action against them. There's no judgment against them that they have to pay. There's no requirement that they report this to other state bars when they go to apply for PROHOC-VCHA admission. They haven't claimed, well, I tried to get admitted PROHOC-VCHA in some state and I couldn't because of this sanctions order. Their interests that they have listed, like their attorney's lien, are speculative, relying on conjecture. There simply is no injury, there is no real injury here from the order. And so, standing would be a perfectly valid reason to affirm the dismissal of this lawsuit. Do you agree, though, that their underlying claim sort of sounds in defamation or libel or, I mean, that's, I think what the theory is, is that this was untrue and therefore it stains our reputation. But those sorts of reputational harms generally aren't sufficient for a 1983 claim. Because, for example, on their retaliation claim, the idea behind it is that it would chill a person of ordinary firmness. And what this court has held is that, well, a person of ordinary firmness, when you say something that harms their reputation, they're going to do everything they can to prove that untrue. And I would raise, what have they been chilled against? I mean, they're here with this lawsuit. They clearly haven't been stopped from filing this lawsuit. And so, yes, I agree with that. But I don't think that they have adequately pleaded a cognizable injury that can be redressed in a federal court. Mr. Thompson, I'd like to have you address the state actor issue again, if you would, in some more depth. Mr. Gilm says that they have sufficiently pleaded facts to show that there are state actors here. What is your response to that? Your Honor, both sides here point to DeBose versus Kelly on the state actor issue. And what DeBose versus Kelly specifically said was that ex parte communications and displays of cordiality between the judge and the attorneys, those standing alone aren't enough to make an attorney a state actor. And that's really all they have alleged. What do they need to allege? I think he, let's take DeBose versus Kelly as an example. There they allege specific comments by the judge that the outcome had in some way been fixed between the attorneys and the judge. And here there's no comparable allegation of the judge ever saying anything that indicated that he had decided this way because of the relationship he had with Mr. Ephraim Neely or because of some conspiracy that had happened. That's what's missing. You know, the comment in DeBose versus Kelly of you can enjoy your retirement and that your evidence issues are taken care of, those go quite a bit beyond simply alleging that there were some meetings in the judge's chamber, simply alleging there were some meetings in the judge's chambers. And they haven't met that. And so then really you're just left with the allegation of this relationship that exists between, that they allege exists between Mr. Neely and the state court trial judge. I do not believe they've adequately alleged a state actor. Do you see that as a threshold issue in a section 1983 claim? Certainly it's an issue that the, another issue the court could affirm this dismissal on the basis of is the lack of a state actor. You can't be liable in a 1983 claim, of course, unless you're a state actor. And attorneys generally are not state, are generally not state actors. So absolutely, they don't have a 1983 claim unless they've adequately alleged state action. On that point, wouldn't a conspiracy though, I mean, I know you don't think there was a conspiracy, there may not have been, but wouldn't a conspiracy be the prototypical case where it makes a private, conspiracy with a state actor? Wouldn't that be the prototypical case where it would create state action on the part of a private party, if true? And I'm not asking you to, but if true, that seems like the kind of case that would create state action. But they have to allege more than just the, they can't just give a formulaic recitation of the elements of a conspiracy. They've got to plead facts that plausibly show that conspiracy. And all they've alleged is, yes, there was a conspiracy. And the only facts they've given was a relationship existed and ex parte communications. Those are the facts they've given. And those facts under DeBose v. Kelly expressly don't chin the bar. Again, for any number of reasons, we ask the court affirm the dismissal of this lawsuit. Thank you. How much time do we have for rebuttal? Let's set it to two minutes, please. Thank you. Um, on the issue of standing and injury, uh, and wanting finality, they're, they're kind of coming at it from two completely different positions. They say that they want this case over with, and they need this to come to an end. Well, they've got a lawsuit against us in Faulkner County. What's really going on is they want to take this sanctions order from the state court and say that we were in privity with Gina Baker and say that therefore we are collaterally estopped from, or subject to res judicata from contradicting, uh, the findings that torts were committed in that, what should have been a rule 37 order. And then take away in the Faulkner County action, our right to a jury trial and simply have a trial on damages so that we can't defend ourselves there. That's what's going on. That would definitely be offensive mutual non collateral or collateral estoppel, non mutual collateral estoppel. And that's unlikely to, I mean, maybe they're, maybe they're trying that, but that's very unlikely to succeed, isn't it? Uh, it should not succeed. I mean, they've obtained an order saying that we had no interest in that state court case. And so it shouldn't be applied because that's inconsistent with applying collateral estoppel to us. If it was applicable to us, then we would have had an interest that merited intervention. They obtained relief on that position, uh, from the, from the state court. And so they should be stuck with it. Now, having said that they've also impaired us, uh, subjected us to injury based on, uh, forcing us to withdraw out of the case based on a false conflict, uh, where they basically convinced our former client to make up false allegations and bring suit against us and testify falsely against us that created the conflict that forced us to withdraw. We've also, you know, access to the courts is a right. The ability to, uh, exercise free speech and petition right, uh, rights under the first amendment, that is a right under the Velazquez case. And when you, uh, look at it, the standard is, would it have chilled not us, but a person of ordinary firmness? Well, we're a lot tougher than a person of ordinary firmness, but an ordinary firmness, if subjected to all that we've been through and that has been described in this complaint would have been deterred from ever bringing this. Thank you for the extra time. I really appreciate it. All right. Thank you, counsel. The case is submitted and the court will be in recess for 10 minutes.